IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| In re Gary A. Armstrong<br>*Appellant*<br><br>Diane M. Davis<br>*Debtor* | §<br>§<br>§ CIVIL ACTION No. 4-11-cv-772<br>§<br>§<br>§ U.S. Bankruptcy Court Case No. 09-42865<br>§ |

## MEMORANDUM OPINION ON APPEAL FROM BANKRUPTCY COURT

Appellant, debtor's counsel Gary Armstrong, appeals an order by the Honorable Brenda T. Rhoades, Chief United States Bankruptcy Judge, imposing $500 in sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011. Judge Rhoades found that Mr. Armstrong filed a petition under Chapter 13 for an affluent debtor, representing that all creditors would be paid, all the while intending to avoid paying her credit card debts, and concluded that Mr. Armstrong engaged in an improper scheme to obtain the equivalent of a Chapter 7 discharge.

This court finds no clear error in Judge Rhoades' findings of fact, and, after *de novo* review, finds no error in her conclusions of law. Judge Rhoades did not abuse her discretion in sanctioning debtor's counsel for attempting to abuse the bankruptcy process by discharging debts his client could not in good faith challenge. The judgment of the Bankruptcy Court is therefore affirmed.

## I. BACKGROUND

The somewhat complicated factual and procedural background of this case is well set out in Judge Rhoades' Memorandum Opinion and Order on objections [Doc. # 75 ][1] and her Memorandum Opinion ordering sanctions. [Doc. # 118]. In summary, Debtor Diane M. Davis filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. She was represented by Gary Armstrong of the law firm Armstrong Kellett Bartholow P.C. Ms. Davis is by all accounts an affluent debtor. She is a single woman with no dependents, and her gross annual income was $121,760 in the year preceding her petition.

Her schedule of general unsecured creditors lists all of her credit card debts. With respect to each of these debts, the debtor included the following remark in her Schedule F: "Debtor listed the balance shown on last statement, debtor not presently able to determine if balance is correct and is uncertain if trade name is correct legal creditor." [Doc # 1 at 17-20]. Twelve creditors, including seven that were listed in the debtor's schedule F filed claims against the debtor, totaling $147,400.68. Debtor's Chapter 13 plan proposed to make monthly payments to the chapter 13 trustee for a period of 60 months which would result in full payment to all her general unsecured creditors. [Doc. # 2]. Not surprisingly, no creditor objected. The Bankruptcy Court entered an order confirming the plan, subject to the claims allowance process. [Doc. #21]

The debtor filed identical objections to the claims of each and every one of her general unsecured creditors. [Doc. # 32-43]. The debtor submitted substantially identical affidavits in support of each of her claim objections which stated that she has received the claim but "cannot

---

[1] All documents referred to in this Memorandum Opinion are those filed in the underlying bankruptcy case, cause number 09-42865.

determine that the amount stated on the claim is accurate because there are no ledgers or other accounting records attached to the proof of claim." The affidavit further provides that due to this lack of documentation provided by the claimant, she cannot verify the account, establish that the charges were made within the limitations period, or determine whether the claim was enforceable against her. [*Id.*].

Some claimants subsequently either filed amended claims with additional documentation or provided debtor's counsel with additional documentation including billing statements and cardholder agreements. Upon receiving documentation from these claimants, counsel withdrew the objections to their claims. However, counsel filed seven certificates of no response to debtor's objections, notifying the court that these seven creditors had not responded to the debtor's lack of documentation objections. [Doc. # 53-59].

The Bankruptcy Court held a hearing to address its concern that counsel was abusing the bankruptcy process by filing objections to every claim based on lack of documentation when the debtor was not denying that she had liability to these creditors. Judge Rhoades pointed out to counsel that the debtor's objections failed to satisfy the burden of producing at least some evidence, equal in probative evidence to that offered by the proof of claim, and which, if believed, would refute at least one of the allegations essential to the claim's legal sufficiency. *See In re Rally Partners, L.P.,* 306 B.R. 165, 1687-69 (Bankr. E.D. Tex. 2003).

As the Bankruptcy Court stated on the record, it appeared that counsel was "playing games" by asking the court to disallow claims simply based on an alleged lack of "sufficient" documentation attached to the claim and not upon debtor's own knowledge of documents or statements she had received, or on a belief that the claim was improper or was not actually

3

owing. [Doc. # 85 at 7]. Mr. Armstrong was not prepared to address the court's concerns, so the court continued the hearing to allow testimony from the debtor regarding any substantive objection to the claims in her case as well as testimony about investigation conducted prior to filing each objection to her creditors' claims.

Several members of Mr. Armstrong's law firm appeared for the continued hearing. They represented that their client was present in the courtroom but refused to offer any evidence, including testimony from the debtor, establishing a substantive ground for the disallowance of the disputed claims. Instead, they stated that they believed their objections were sufficient because the creditors did not comply with Federal Rule of Bankruptcy Procedure 3001[2], and, as such, their claims were not prima facie valid. Counsel requested that the bankruptcy court disallow each and every one of these claims. [Doc. # 86].

On March 31, 2011, the bankruptcy court entered a twenty-seven page memorandum detailing the factual and legal basis for overruling the debtor's claim objections. Judge Rhoades noted that the proofs of claim substantially complied with Federal Rule of Bankruptcy Procedure 3001, and sufficiently informed the debtor of the basis of the claims. She pointed out that debtor articulated no substantive reason for disallowing the disputed claims under 11 U.S.C. § 502(b)(1). The court vacated the order confirming the debtor's plan on the grounds that the debtor acted in bad faith.

The court also addressed the ethical concerns raised by the evident deliberate blindness of debtor's counsel to the debtor's personal knowledge of her debts; his failure to investigate and

---

[2] Rule 3001 requires that creditors attach supporting documentation to their proofs of claims.

to assure to the best of his ability that the schedules were complete and accurate before they were filed, and the failure to comply with the court's request to provide the court with some evidence in support of claim objections. The bankruptcy court required counsel for debtor to appear and show cause as to why the court should not impose sanctions. [Doc. # 75].

On May 12, 2011, the court held a show cause hearing in order to determine whether Mr. Armstrong's conduct violated Bankruptcy Rule 9011(b) and, if so, whether to sanction him. At the hearing, counsel for Mr. Armstrong argued that Mr. Armstrong was an experienced bankruptcy attorney who made an effort to comply with the bankruptcy code while diligently representing his client. Mr. Armstrong testified concerning the investigation he made into the debtor's finances before filing the schedules and objections. Specifically, Mr. Armstrong explained that while the debtor provided him with the most recent statements from each credit card he listed on the debtor's Schedule F, she did not have the actual cardholder agreement.

Mr. Armstrong testified that without the cardholder agreement, he "couldn't be certain that" the fees and charges that were being assessed were correct and "couldn't be certain" that the trade name used on the statement was the actual legal creditor. [Doc. # 101 at 29-30]. Mr. Armstrong claimed to believe that without the signed credit agreement, there could be a "remote possibility" that the incorrect creditor would file a proof of claim. [*Id.* at 53]. Mr. Armstrong also claimed that a meticulous review of the cardholder agreements "*might*" have provided the debtor with a substantive claim (such as for usury, breach of contract, or under the fair debt collection practice act) to assert. *Id.* at 30-31. Mr. Armstrong asserted that this justified disputing every debt on the debtor's Schedule F, regardless of whether his client actually disputed those claims.

After reviewing the proofs of claims submitted by each creditor, Mr. Armstrong testified he believed that none of the claims complied with Federal Rule of Bankruptcy Procedure 3011(c). In his opinion, this lack of documentation gave rise to an objection under 11 U.S.C. § 502(b)(1). Mr. Armstrong then testified that several claimants pursued attempts to resolve his objections informally. Evidently he was gracious enough to communicate via telephone and e-mail[3] with these claimants' attorneys, requesting specific additional documentation. After reviewing the additional records provided by the claimants, Mr. Armstrong determined that some of the claimants provided him with ample (in his own opinion) evidence to prove the enforceability of their claims under Texas law. Based on his review of the additional records, (and presumably on the fact that those debtors had established that they had counsel ready and able to come to court and establish the utter lack of merit to his position), Mr. Armstrong decided to withdraw those objections.

With regards to those claimants who failed to respond to his lack of documentation objections, Mr. Armstrong claimed he was of the opinion that those creditors defaulted, and that all those objections would be sustained. He asserted that he believes this is the practice in the Northern District. [Doc. # 101 at 33]. He admitted, however, that at some point thereafter (perhaps because he read the heading on the pleadings) he realized that he was in the Eastern District, which did not follow this practice. He claimed that he learned that courts were divided as to whether a claims objection can be based totally on lack of documentation. [*Id.* at 33, 110]. Mr. Armstrong also filed a legal brief in support of his argument that lack of documentation was a substantive objection under the Bankruptcy Code. [Doc.# 96].

---

[3]These emails were introduced as exhibits at the show cause hearing.

On September 30, 2011, the Bankruptcy Court issued a memorandum opinion finding that counsel engaged in an improper scheme to allow his client, an affluent debtor, to obtain a quick discharge of her unsecured debt in violation of Bankruptcy Rule 9011(b). In particular, the court made the following findings of fact:

1. Mr. Armstrong facilitated the filing of a bankruptcy schedule that contained a false or manufactured dispute;

2. Mr. Armstrong filed a plan that falsely stated creditors would be paid in full;

3. Mr. Armstrong filed lack of documentation objections, ignoring the debtor's personal knowledge of her debts and without making a reasonable inquiry into the facts and law before presenting objections to the court; and

4. Mr. Armstrong conducted himself with an improper purpose.

Based on these findings, the court ordered Mr. Armstrong to pay a penalty of $500 to deter repetition of such conduct and comparable conduct by others similarly situated. [Doc. # 118]. Mr. Armstrong now appeals the sanctions order.

## II. STANDARD OF REVIEW

District courts review bankruptcy court rulings and decisions under the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *In re Nat'l Gypsum Co.,* 208 F.3d 498, 504 (5th Cir. 2000). A bankruptcy court's imposition of sanctions under Rule 9011 is reviewed for an abuse of discretion. *In re First City Bancorporation of Texas, Inc.*, 282 F.3d 864, 867 (5th Cir. 2002). "A court abuses its discretion when its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.*

### III. ISSUES PRESENTED

Appellant Armstrong raises one issue on appeal: whether the Bankruptcy Court abused its discretion in imposing sanctions under Federal Rule of Bankruptcy Procedure 9011 against debtor's counsel.

### IV. DISCUSSION

**A. Applicable Law: Rule 9011(b)**

Federal Rule of Bankruptcy Procedure 9011(b) provides in relevant part

> (b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> . . .
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

Fed. R. Bankr. P. 9011(b)(1), (3).

Because Rule 9011 is substantially identical to Federal Rule of Civil Procedure 11, courts refer to Rule 11 jurisprudence when considering sanctions under Rule 9011. *In re Pratt*, 524 F.3d 580, 586 & n. 19 (5th Cir. 2008). An attorney may be subject to Rule 11 sanctions where he makes " 'allegations and other factual contentions [lacking] evidentiary support' or *unlikely to prove well-grounded* after reasonable investigation" *Clinton v. Jones*, 520 U.S., 681, 709 n. 42, 117 S. Ct. 1636, 1652 n. 42 (1997)(emphasis added). As the Fifth Circuit stated, "[i]f Rule 11 is to mean anything . . . it must mean an end to such expeditionary pleadings ... 'where the pleader

heedlessly throws a little bit of everything into his complaint in the hopes that something will stick.' " *S. Leasing Partners Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986)(observing that plaintiff sued a defendant without knowing how he fit into the picture, apparently hoping that later discovery would uncover something) *abrogated on other grounds*[4] by *Thomas v. Capital Sec. Servs.*, 836 F.2d 866, 874 (5th Cir. 1988).

**B. Analysis**

*1. Mr. Armstrong's actions had an improper purpose*

Judge Rhoades found that Mr. Armstrong attempted to attain a Chapter 7 style discharge for Ms. Davis; a result an above-median income debtor like Ms. Davis could not pursue in a Chapter 13 case. Accordingly, Judge Rhoades concluded that Mr. Armstrong "had participated in or facilitated a scheme to improperly manipulate the bankruptcy process." [Doc. # 118 at 6].

The evidence supports these findings. Mr. Armstrong filed all credit card debts as "disputed" to justify his later objections. But he lulled creditors into complacency by filing a plan that provided for payment to all these creditors, which resulted in no objections to the plan being filed. Then he objected to every single proof of claim on the sole grounds of "insufficient" documentation, without any evidence, or even any belief, that the debt was not owed or that a substantive defense under Texas law existed. If he had a good defense to these claims under Texas law, there would be no need to file bankruptcy.

---

[4]*Thomas* overruled the continuing legal obligation interpretation of Rule 11 discussed in *McMullan*. Instead, Thomas held that an attorney's conduct is evaluated at the time a pleading, motion, or other paper is signed.

Although given ample opportunity by Judge Rhoades at two hearings, debtor set out no proper purpose for these actions. Attempting to manipulate the bankruptcy process is an improper purpose under 9011 and, grounds for sanctions. *See, e.g., Campbell v. Countrywide Home Loans, Inc.,* 545 F.3d 348, 356 n. 1 (5th Cir.2008) (noting that Bankruptcy Rule 9011 and 11 U.S.C. § 105 provide "mechanisms to impose sanctions on parties who may attempt to abuse the procedural mechanisms within the bankruptcy court").

## *2. Factual contentions had no evidentiary support*

Mr. Armstrong admitted at the show cause hearing that he wanted to review the debtor's credit card agreements on the off-chance that something within the agreements "*might*" have provided the debtor with a substantive objection to assert under state law. He stated that he could not "be certain" that the fees and charges that were being assessed were correct and there was a "remote possibility" that the incorrect creditor would file a proof of claim[5].

The bankruptcy court provided the debtor with ample opportunity to present testimony regarding any substantive objection to the claims in her case as well as what investigation she conducted prior to filing each objection to her creditors' claims. The debtor did not testify that she did not incur the underlying debts or that she questioned the amounts claimed by her creditors. In other words, there is no evidence that Mr. Armstrong had a good faith basis for believing that the debtor had a valid substantive objection under Texas law. Rather, the record establishes that counsel filed lack of documentation objections on the "remote possibility" that a meticulous review of the credit card agreements would provide the debtor with a viable defense.

---

[5]Despite this assertion, the debtor and her counsel were certain enough of the creditors' names and addresses to correctly file a mailing matrix which allows the bankruptcy clerk to mail creditors notice of the deadline for filing proofs of claims. *See* Local Bankruptcy Rule 1007.

An attorney violates Federal Rule of Bankruptcy Procedure 9011 when he makes objections in the unlikely event that investigation might yield his fishing expedition fruitful. *See Clinton,* 520 U.S. at 709 n. 42, 117 S. Ct. at1652 n. 42; *see also Garr v. U.S. Healthcare, Inc.*, 22 f.3d 1274, 1279 (3d Cir. 1994)(citing *Vista Mfg., Inc. v. Trac-4 Inc.*, 131 F.R.D. 134, 138 (N.D. Ind. 1990)("A shot in the dark is a sanctionable event, even if it somehow hits the mark.. . if a lucky shot could save the signer from sanctions, the purpose of Rule 11 to deter baseless filings would be frustrated")).

"Bankruptcy courts are courts of equity and rely on the good faith of parties to function efficiently." *In re Thomas*, 2007 WL 654241 at*4 (5th Cir. Mar. 1 2007) citing 11 U.S.C. § 1325(a)(3). A bankruptcy court simply cannot function if an attorney insists on filing procedural objections without any basis in fact or *reasonable* basis that further investigation would prove his objection correct. As the bankruptcy court stated "[i]t is clearly not permissible to file claims objections and then wait and see how the claimants respond as the sole means of finding out whether you have a dispute." [Doc. # 118 at 8].

### 3. *No nonfrivolous argument for extension, modification, or reversal of existing law*

Mr. Armstrong's sole argument seems to be that his objections are based upon, and even approved by, the Northern District of Texas. Northern District Local Bankruptcy Rule 9007-1(g) does provide that where a response is not timely filed, a non-moving party shall file a certificate stating that no objections have been timely served upon the moving party. But, this case is in the Eastern District of Texas. No such rule has been adopted by the Eastern District, so there is no basis to claim that Mr. Armstrong's contentions are warranted by existing law.

The Local Rules of Bankruptcy Procedure for the Eastern District of Texas provide that attorneys must abide by the conduct set forth in this court's local rules. *See* Local Bankruptcy Rule 1001(I). Lawyers who practice in the Eastern District represent in their application that they have read Local Rule AT-3 the "Standards of Practice to Be Observed by Attorneys," and that "he or she will comply with the standards of practice adopted in Local Rule AT-3. Local Rule AT-1(b)(2).[6]

Local Rule AT-3 provides in relevant part:

Attorneys who appear in civil and criminal cases in this court shall comply with the following standards of practice in this district:

(A) In fulfilling his or her primary duty to the client, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client.

(B) A lawyer owes, to the judiciary, candor, diligence, and utmost respect.

. . .

(H) A lawyer should not use any form of discovery, or the scheduling of discovery, as a means of harassing opposing counsel or counsel's client.
. . .
(K) Effective advocacy does not require antagonistic or obnoxious behavior, and members of the bar will adhere to the higher standard of conduct which judges, lawyers, clients, and the public may rightfully expect.

Mr. Armstrong admits that at some point before the show cause hearing, he became aware that the Eastern District of Texas did not allow debtors to object to claims a debtor has no basis to contest, merely on the basis of "insufficient documentation".[7] The Bankruptcy Court

---

[6] A court may sanction an attorney for violating its local rules, even if the violation is not willful. *Barbosa v. County of El Paso*, 1998 WL 648596 at *3 n. 1 (5th Cir. Sept. 8, 1998)

[7] The court will forgo comment on an attorney who submits twenty pages of testimony as to his experience and qualifications, [Doc. # 101; Tr. 5/12/11 ] but who neglects to read the local rules of the court in which he practices.

12

provided Mr. Armstrong with several warnings and indications that such a practice would not be tolerated in this district. Judge Rhoades then stated on the record that it wanted to hear the debtor testify as to any substantive objection she may have. Instead of allowing the debtor to testify, Mr. Armstrong and members of his law firm continuously insisted that lack of documentation was a viable objection to a proof of claim.

Mr. Armstrong does not argue that the Eastern District should change its rules to comply with those of the Northern District. But even if he had, he provides no authority for the proposition that the Northern District encourages automatic rejection of valid claims a debtor knows are properly owed, merely because of insufficient documentation. *See e.g. In re Armstrong*, 320 B.R. 97, 108 (Bankr. N.D. Tex. 2005 (refusing to adopt a per se rule that a debtor acts in bad faith by objecting based on a proof of claim's documentation but recognizing that "a debtor's *over-reliance* on non-substantive objections to claims may be evidence of abuse of the bankruptcy process.")(emphasis added).

The implication that the Northern District encourages an attorney to advance claims the attorney knows are baseless is especially ironic. The standards of conduct governing conduct in the Eastern District of Texas, set out in Eastern District Local Rule AT-3, are those enumerated in *Dondi Prop. Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 286 (N.D. Tex. 1988) *See* Local Rule AT-3 n. 3. That opinion was issued *en banc* by the Northern District of Texas as it took a nationally prominent position in the fight to curtail "Rambo" litigation. "Our system of justice can ill-afford to devote scarce resources to supervising matters that do not advance the resolution of the merits of a case." 121 F.R.D. at 286 .

*4. Professional duties did not justify Mr. Armstrong's conduct*

Mr. Armstrong contends that he was simply "fulfilling his duties to his client," so the sanctions imposed by the bankruptcy court were unjustified. That tired excuse for abuse of opposing parties and the advancement of baseless claims has been thoroughly discredited. *See Sec. & Exch. Comm. v. Recile*, 10 f.3d 1093, 1099 (5th Cir. 1993); *see also In re First City Bancorporation of Texas, Inc.*, 270 B.R. 807, 813 (N.D. Tex. 2001)("[i]n fulfilling his or her primary duty to the client, a lawyer must be very conscious of the *broader duty* to the judicial system that serves both attorney and client." citing *Dondi* 121 F.R.D at 287)(emphasis in original)

A lawyer licensed in the State of Texas should "zealously asserts the client's position under the rules of the adversary system." Tex. Disciplinary Rules Prof'l Conduct preamble ¶ 2. But that duty must be undertaken in combination with the other responsibilities to opponents and the court set out in the preamble, and with the following mandates set out in the Rules:

> Rule 3.01 Meritorious Claims and Contentions
>
> A lawyer shall not . . . assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous.

Mr. Armstrong's "remote possibility" that there might be a claim does not rise to a reasonable belief.

> Rule 3.02 Minimizing the Burdens and Delays of Litigation
>
> [A] lawyer shall not take a position that unreasonably increases the costs or other burdens of the case . . . .

Forcing opponents to respond to extensive communications to document what a lawyer already knows to be a valid claim against his client unreasonably increases costs.

Mr. Armstrong's discredited concept of his ethical duty to his client is no basis for this court to find that Judge Rhoades abused her discretion in deciding that sanctions were warranted.

### 5. *A sanction of $500 was proper*

A sanction imposed for violation of Rule 9011 "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by other similarly situated." Fed. R. Bank. P. 9011(c)(2); *see also Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 878 (5th Cir. 1998)(requiring a sanctioning court to award the least severe sanction adequate to further the purpose of Federal Rule of Civil Procedure 11). Judge Rhoades carefully considered what amount would be sufficient, but no more than necessary to achieve deterrence. She did not abuse her discretion.

Mr. Armstrong and his partners made it clear that a mere warning or admonishment would not deter them from repetition of their conduct in this district. And, it was necessary for the court to consider deterrence of Mr. Armstrong's firm, as well as general deterrence of others who might be tempted to emulate Mr. Armstrong. The typical federal district court disposes of hundreds of cases each year - a bankruptcy court disposes of thousands. It is not uncommon to see dozens of attorneys in a bankruptcy courtroom, presenting arguments and objections on a long list of cases, with rulings issuing at pace that makes a cattle auction appear leisurely. A bankruptcy court does not have the time district courts devote to a motion, to examine each petition, proof of claim, and objection; the bankruptcy judge must rely on counsel to act in good faith. The potential for mischief to be caused by an attorney who is willing to skirt ethical obligations and procedural rules is enormous. There is no question that strong deterrence must be a consideration when a bankruptcy judge considers sanctions.

Debtor attempted to avoid payment of $147,400.68 in claims that she had no reason to believe she did not owe. After some claimants responded to counsel's demands for more and more proof, seven were left, and this Chapter 13 debtor attempted to obtain a Chapter 7 style discharge of their claims, in the amount of $57,478.15. The sanction of $500.00 is less than one per-cent of that amount.

Mr. Armstrong argues that this sanction may chill "this and other debtor's counsel from properly representing their clients in Bankruptcy Court." To the contrary, the sanction will encourage counsel to conduct a proper investigation of each client's assertions, to read the Bankruptcy Rules and the local rules of court, and to refrain from pleadings that have no basis in law or fact.

This court agrees with Judge Rhoades that a monetary sanction in the amount of $500 was the least severe sanction adequate to deter repetition of the conduct engaged in by Mr. Armstrong. The court has little doubt that, under the circumstances of this case, more than one court would have imposed a far greater sanction on Mr. Armstrong.

## V. CONCLUSION

The record reflects that Mr. Armstrong participated in, or facilitated a scheme to improperly manipulate the bankruptcy process. Despite repeated warnings, he refused to modify his behavior. This was not a case of new law school graduate stumbling on an esoteric provision of the Bankruptcy Code. Neither was this a case where a misunderstanding was corrected upon its discovery. Mr. Armstrong was an experienced attorney who chose a deliberate course of action designed to reap benefits for his client, to which she was not entitled. He did not investigate, or was deliberately blind to, the information his client had pertaining to creditor's

claims, and he failed in his obligation to know and observe the local rules of the court in which he appeared. He filed objections that served only to harass opponents, and when questioned by the Bankruptcy Court he stubbornly persisted in an untenable position.

Judge Rhoades's findings of fact are well supported by the record, and in no way can be said to constitute clear error. Her conclusions of law are correct. Imposition of sanctions was warranted, and not an abuse of discretion.

It is **ORDERED** that the Bankruptcy Court's September 30, 2011 Order requiring counsel of record for debtor, Gary Armstrong, to pay $500 to the Clerk of the Bankruptcy Court for violating Fed. R. Bankr. P. 9011(b)(1), (3) is **AFFIRMED**.

So **ORDERED** and **SIGNED** this **21** day of **September, 2012.**

_____
Ron Clark, United States District Judge